**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Sylvia Smith, et al., | Case No.: 2:21-cv-01685-JAD-NJK |
| Plaintiffs | |
| v. | **Order Granting Motion to Remand and Denying Motions to Dismiss** |
| The Heights of Summerlin, LLC, et al., | [ECF Nos. 5, 6, 9, 23] |
| Defendants | |

George Woods's daughter and the administrator of his estate filed this action in state court against a nursing home, The Heights of Summerlin, and two other defendants, following Woods's death in April 2020.[1]  Their complaint includes claims of elder abuse, neglect of a vulnerable person, willful misconduct, negligence, wrongful death, breach of contract, and tortious and contractual breach of implied covenant following Woods's death in April 2020.[2]  The defendants removed, theorizing that because this case involves protocols they implemented in response to the COVID-19 pandemic, federal jurisdiction exists under either the Public Readiness and Emergency Preparedness (PREP) Act[3] or the federal-officer removal statute.[4]  The plaintiffs move to remand,[5] and the defendants move to dismiss.[6]  Joining with the vast majority of courts that have considered these issues, I find that neither the PREP Act nor the

---

[1] Defendant Summit Care owns and operates The Heights, and Defendant Genesis is the parent company of both The Heights and Summit Care.  ECF No. 1-2 at ¶¶ 6–7.

[2] *Id.* at ¶¶ 1, 57–113.

[3] 42 U.S.C. § 247d-6d.

[4] 28 U.S.C. § 1442(a)(1).  *See* ECF No. 22 at 7–9.

[5] ECF No. 9.

[6] ECF No. 5; ECF No. 6; ECF No. 23.  I find that all four motions are suitable for disposition without oral argument.  *See* L.R. 78-1.

federal-officer removal statute is a sufficient basis for this court to exercise jurisdiction over this case. So I grant the plaintiffs' motion to remand, deny as moot the motions to dismiss, and send this case back to state court.

## Background[7]

For nine years, 85-year-old Woods was a resident at The Heights, where he was "wholly dependent" on the defendants "for all activities of daily life, including shelter, food and feeding, clothing, laundry, hydration, mobility, medication, and any and all medically necessary treatments."[8] Woods suffered from hypertension, diabetes, heart failure, and a history of strokes, all of which the plaintiffs characterize as "impairments that required total care."[9] On April 16, 2020, the defendants reported that Woods had been tested for COVID-19 and was being transferred to Summerlin Hospital "for evaluation and treatment," "with complaints of [a]ltered [m]ental [s]tatus."[10] He was also "transferred due to worsening Dysphagia" and was "in known Atrial Fibrillation heart[] rhythm with Rapid Ventricular Response, and his transfer chart reported that he was also confused and lethargic."[11] A chest x-ray showed that Woods had pneumonia and some other medical conditions, and the next day, he "was found to have severe Sepsis."[12] Two days after being admitted to the hospital, Woods tested positive for COVID-19 and was moved to the Intensive Care Unit.[13] He was "eventually found to have an Acute Kidney

---

[7] These facts are a summary of the plaintiffs' allegations and are not intended as findings of fact.
[8] ECF No. 1-2 at ¶¶ 13, 16.
[9] *Id.* at ¶ 14.
[10] *Id.* at ¶ 42.
[11] *Id.* at ¶ 43.
[12] *Id.* at ¶¶ 44–45.
[13] *Id.* at ¶ 46.

Injury and Acute Renal Failure."[14]  He died on April 19, 2020, with COVID-19, pneumonia, and acute respiratory distress syndrome listed as the causes of his death.[15]

The plaintiffs filed their initial complaint in Nevada state court on April 19, 2021.[16]  It contains exclusively state-law claims including elder abuse, neglect of a vulnerable person, willful misconduct, negligence, wrongful death, breach of contract, and tortious and contractual breach of implied covenant.[17]  The defendants removed the case to federal court on September 13, 2021.[18]  One week later, The Heights moved to dismiss the plaintiffs' complaint,[19] and Summit Care separately moved to dismiss.[20]  Just over a month later, Genesis filed its own motion to dismiss.[21]  The plaintiffs oppose those motions and move to remand the case back to state court.[22]

## Discussion

"Federal courts are courts of limited jurisdiction,"[23] and there is a "strong presumption against removal jurisdiction."[24]  Removal statutes are strictly construed, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first

---

[14] *Id.*

[15] *Id.* at ¶ 47.

[16] *Id.* at 2.

[17] *Id.* at ¶¶ 57–113.

[18] ECF No. 1.

[19] ECF No. 5.

[20] ECF No. 6.

[21] ECF No. 23.

[22] ECF No. 9.

[23] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[24] *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation marks and citations omitted).

instance."[25]   The defendant always has the burden of establishing that removal is proper,[26] and

"[a]n action filed in state court may be removed only if the district court could have exercised

jurisdiction over the action if originally filed there."[27]   "The presence or absence of federal-

question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that

federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's

properly pleaded complaint."[28]   "The rule makes the plaintiff the master of the claim; he or she

may avoid federal jurisdiction by exclusive reliance on state law."[29]

## I.      The PREP Act does not supply federal jurisdiction.

Defendants removed this action to federal court based on federal-question jurisdiction,

and they offer two jurisdictional reasons that this case belongs in federal court, the first of which

is the PREP Act.[30]   The PREP Act shields "covered persons" such as pharmacies and drug

manufacturers[31] from liability "for all claims for loss caused by, arising out of, relating to, or

resulting from the administration to or the use by an individual of a *covered countermeasure*."[32]

It authorizes the Secretary of the U.S. Department of Health and Human Services (HHS) to issue

---

[25] *Id.* (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

[26] *Id.*

[27] *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

[28] *Id.* (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936)).

[29] *Caterpillar Inc.*, 482 U.S. at 392.

[30] ECF No. 1 (petition for removal).

[31] *Maglioli v. Alliance HC Holdings, LLC*, 16 F.4th 393, 400 (3d Cir. 2021).

[32] 42 U.S.C. § 247d-6d(a)(1) (emphasis added).   Covered countermeasures are narrowly defined as drugs, biological products, and devices "manufactured, used, designed, developed, modified, licensed, or procured" to "diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic" or to "limit the harm such pandemic or epidemic might otherwise cause."   42 U.S.C. § 247d-6d(i)(7).

1  declarations that "a disease or other health condition or other threat to health constitutes a public

2  health emergency."[33]  "The Act lies dormant until invoked by the Secretary of" HHS,[34] who

3  declared the COVID-19 pandemic such an emergency in March 2020.[35]  If a claim is barred

4  because of PREP Act immunity, injured parties are not without a remedy.  The Act establishes a

5  compensation fund "for covered injuries directly caused by the administration or use of a

6  covered countermeasure."[36]

7  **A.     The plaintiffs' allegations do not implicate the PREP Act.**

8  The plaintiffs contend that this case belongs in state court because their complaint

9  involves entirely state-law claims and the defendants aren't covered persons being sued for

10  covered countermeasures under the PREP Act.[37]  The defendants, on the other hand, cast this

11  case as one focused on the insufficiency of their COVID-19 protocols.  But the threshold

12  questions are whether the plaintiffs assert the types of claims that implicate the PREP Act or

13  whether the defendants are the types of persons using the types of countermeasures covered in

14  the Act, and the answer to both questions is no.

15  ***1.     The plaintiffs' claims don't involve federal law.***

16  In a creative attempt to manufacture federal-court jurisdiction,[38] the defendants

17  characterize this dispute as one focusing on a single issue: their alleged use of covered

18

19  [33] 42 U.S.C. § 247d-6d(b).

20  [34] *Maglioli*, 16 F.4th at 400.

21  [35] Declaration Under the PREP Act for Medical Countermeasures Against COVID-19 (the Declaration), 85 Fed. Reg. 15198-01, 2020 WL 1245193 (Mar. 17, 2020).

22  [36] 42 U.S.C. § 247d-6e.

[37] ECF No. 1-2; ECF No. 9 at 9–22.

23  [38] Many other similar cases have recently been remanded to state court after defendants attempted to remove based on the PREP Act or the federal-officer removal statute.  *See, e.g.*, *Hagoubyan*, 2021 WL 4288524; *Sarnoff v. Silverado Senior Living, Inc.*, 2021 WL 4168191

countermeasures.  But the plaintiffs' allegations center on the defendants' failure "to follow proper safety protocols and procedures related to COVID-19, as well as general protocols for nursing care facilities generally,"[39] not on their use or non-use of a particular countermeasure. The defendants maintain that such allegations "necessarily implicate Defendants' use and administration of PPE and other covered countermeasures" and thus implicate the PREP Act.[40] This is an overgeneralization.  The PREP Act's purpose is to shield entities from liability stemming from their administration of a covered countermeasure like a vaccine, not to shield them from liability for traditional state-law claims merely because the alleged actions occurred during a public health emergency.[41]  And traditional state-law claims are what we have here, as plaintiffs' case is about the defendants' alleged failure to protect Woods from contracting

---

(C.D. Cal. Sept. 14, 2021) (consolidating six other cases); *Olaso v. Alexandria Care Ctr., LLC*, 2021 WL 4556422 (C.D. Cal. Sept. 10, 2021); *Cortez v. Parkwest Rehab. Ctr. LLC*, 2021 WL 4033759 (C.D. Cal. Sept. 3, 2021); *Martinez v. Spruce Holdings, LLC*, 2021 WL 3883704 (E.D. Cal. Aug. 31, 2021); *Heim v. 1495 Cameron Ave., LLC*, 2021 WL 3630374 (C.D. Cal. Aug. 17, 2021); *Holloway v. Centinela Skilled Nursing & Wellness Ctr. W., LLC*, 2021 WL 4237736 (C.D. Cal. Aug. 17, 2021); *Thomas v. Century Villa Inc.*, 2021 WL 2400970 (C.D. Cal. June 10, 2021); *Rae v. Anza Healthcare Inc.*, 2021 WL 2290776 (S.D. Cal. June 4, 2021); *Riggs v. Country Manor La Mesa Healthcare Ctr.*, 2021 WL 2103017 (S.D. Cal. May 25, 2021); *Padilla v. Brookfield Healthcare Ctr.*, 2021 WL 1549689 (C.D. Cal. Apr. 19, 2021); *Winn v. Cal. Post Acute LLC*, 2021 WL 1292507 (C.D. Cal. Apr. 6, 2021); *Nava v. Parkwest Rehab. Ctr. LLC*, 2021 WL 1253577 (C.D. Cal. Apr. 5, 2021); *Ivey v. Serrano Post Acute, LLC*, 2021 WL 1139741 (C.D. Cal. Mar. 25, 2021); *Smith v. Colonial Care Ctr. Inc.*, 2021 WL 1087284 (C.D. Cal. Mar. 19, 2021); *Jones v. St. Jude Operating Co., LLC*, 2021 WL 886217 (D. Or. Mar. 8, 2021); *McCalebb v. AG Lynwood, LLC*, 2021 WL 911951 (C.D. Cal. Mar. 1, 2021); *Lyons v. Cucumber Holdings, LLC*, 520 F. Supp. 3d 1277 (C.D. Cal. Feb. 3, 2021); *Parker v. St. Jude Operating Co., LLC*, 2020 WL 8362407 (D. Or. Dec. 28, 2020); *Saldana v. Glenhaven Healthcare LLC*, 2020 WL 6713995 (C.D. Cal. Oct. 14, 2020); *Martin v. Serrano Post Acute LLC*, 2020 WL 5422949 (C.D. Cal. Sept. 10, 2020).  "The story in all of these cases is essentially the same." *Maglioli*, 16 F.4th at 402.

[39] ECF No. 9 at 3.

[40] ECF No. 22 at 16.

[41] *See Maglioli*, 16 F.4th at 400–01.

COVID-19 while at The Heights, which ultimately led to his death.[42]  Plaintiffs' references to COVID-19 protocols are insufficient to convert their purely state-law claims into federal ones based on the PREP Act.[43]

### 2.   The plaintiffs aren't suing over covered countermeasures.

The defendants also contend that the PREP Act supplies federal jurisdiction because they are being sued over covered countermeasures.[44]  Covered countermeasures are drugs, biological products, and devices that are used in response to a pandemic, such as vaccines and masks.[45] But the plaintiffs aren't suing over covered countermeasures.  They don't allege that the defendants used—or failed to use—a certain drug, device, vaccine, or other countermeasure as defined by the PREP Act.  They merely state that defendants failed to develop proper protocols to stop the transmission and spread of COVID-19.  But none of these alleged actions or inactions implicates the defendants' use of covered countermeasures.

---

[42] The plaintiffs allege that Woods was one of many residents at The Heights who contracted COVID-19 around the same time in April and May of 2020.  ECF No. 1-2 at ¶¶ 38–41, 50–51 ("During the [m]onths of April and/or May of 2020, it was reported that nearly half of all residents and more than one quarter of the staff at Defendants' nursing home facility, herein tested positive for COVID-19," and at least 28 COVID-19-related deaths were linked to the facility around that time.).

[43] *Maglioli*, 16 F.4th at 400 ("There is no COVID-19 exception to federalism.").  The defendants also rely on *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and argue that because the plaintiffs' claims "invariably turn[] on substantial, unsettled, and disputed questions of federal law, the case belongs in federal court because it is better for the sake of uniformity and federal interests to have a federal court resolve those key questions of federal statutory policy and interpretation."  ECF No. 22 at 24 (citations omitted).  But because the plaintiffs' allegations involve exclusively state-law issues and do not "necessarily raise a stated federal issue, actually disputed and substantial," which is a threshold requirement for the *Grable* doctrine to apply, I reject this argument.  *See Grable*, 545 U.S. at 314.

[44] *Id.* at 17–21.

[45] 42 U.S.C. § 247d-6d(i)(7).

7

3.      ***The defendants aren't covered persons.***

The three defendants are The Heights of Summerlin (a nursing facility), Summit Care (the owner and operator of The Heights), and Genesis (the parent company of the first two).[46] They insist that they are covered persons under the Act because they "administered and used N95 masks, gowns, jumpsuits, and COVID-19 tests."[47]  The plaintiffs respond that the defendants aren't covered persons because they didn't provide countermeasures covered by the Act.[48]

Under the PREP Act, a covered person is a "person or entity" who manufactures or distributes a covered countermeasure; "a program planner of such countermeasure"; "a qualified person who prescribed, administered, or dispensed such countermeasure"; or "an official, agent, or employee of" a covered person.[49]  The defendants rely heavily on HHS Advisory Opinion (AO) 21-01[50] to contend that they should be considered "program planners" and thus entitled to PREP Act immunity.[51]  That opinion attempts to clarify the PREP Act's application to COVID-19 cases in nursing facilities and describes a program planner as "someone who is involved in providing or allocating covered countermeasures."[52]  The defendants urge me to find that AO 21-01 is binding and to apply *Chevron* deference to it because Congress has expressly delegated

---

[46] ECF No. 1-2 at ¶¶ 5–7.

[47] ECF No. 22 at 17.

[48] ECF No. 9 at 13–14.

[49] 42 U.S.C. § 247d-6d(i)(2).

[50] The HHS Office of the General Counsel (OGC) issued this advisory opinion in January 2021, interpreting the HHS Secretary's March 2020 declaration that COVID-19 was a public health emergency under the PREP Act.

[51] ECF No. 22 at 16–17.

[52] Dep't of Health & Human Servs., Office of the Sec'y, General Counsel, Adv. Op. 21-01 at 4 (Jan. 8, 2021).

interpretative authority to HHS.[53]  *Chevron* deference is appropriate "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."[54]

AO 21-01 is not entitled to *Chevron* deference.  The advisory opinion explicitly states that "it is not a final agency action or a final order" and that "[i]t does not have the force or effect of law."[55]  This is a clear indication that HHS did not publish AO 21-01 under congressionally delegated authority.  Rejecting a similar argument, the Third Circuit in *Maglioli v. Alliance HC Holdings, LLC*, concluded that "Congress has not given us power to take this case from the state court."[56]  The court reasoned that Congress delegated to HHS the authority to declare public health emergencies under the PREP Act, but not to interpret federal-court jurisdiction.[57]  For the same reason, I, too, decline to extend *Chevron* deference to AO 21-01.

Were I to accept AO 21-01's definition of "program planner," the defendants still wouldn't qualify as covered persons here because, as discussed *supra*, no part of the plaintiffs' complaint alleges that defendants should be held liable for their use of covered countermeasures.  So I instead apply the PREP Act's definition.  It refers to state and local governments (and the persons they employ) and others who supervise or administer a program regarding pandemic products, "including a person who has established requirements, provided policy guidance, or

---

[53] ECF No. 22 at 21–23 (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984)).

[54] *U.S. v. Mead Corp.*, 533 U.S. 218, 226–27 (2001).

[55] Dep't of Health & Human Servs., Office of the Sec'y, General Counsel, Adv. Op. 21-01 (Jan. 8, 2021).

[56] *Maglioli*, 16 F.4th at 400.

[57] *Id.* at 403–04.

1    supplied technical or scientific advice."[58]  The plaintiffs allege that the defendants failed to

2    establish sufficient COVID-19 protocols within the nursing facility, not that they failed to

3    provide policy guidance to the community-at-large (as a government entity or its employees

4    would).  Because the plaintiffs haven't alleged that the defendants acted in a program-planner

5    role, defendants cannot claim the label of "covered persons" under the PREP Act.

6            **B.       The PREP Act is not a complete-preemption statute.**

7            Even if the plaintiffs' claims were preempted by the PREP Act, that wouldn't necessarily

8    confer federal jurisdiction.  "The fact that a defendant might ultimately prove that a plaintiff's

9    claims are pre-empted . . . does not establish that they are removable to federal court."[59]  "[I]t is

10   settled law that a case may not be removed to federal court on the basis of a federal defense,

11   including a defense of preemption,"[60] unless "the preemptive force of a statute is so

12   'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a

13   federal claim for purposes of the well-pleaded complaint rule.'"[61]  Known as the complete-

14   preemption doctrine, this principle "displace[s] entirely any state cause of action," making the

15   suit "purely a creature of federal law."[62]

16           The defendants contend that the plaintiffs' action—though it asserts exclusively state-law

17   claims—is completely preempted by the PREP Act because the PREP Act issues here are so

18

19

20   ───────────────

[58] 42 U.S.C. § 247d-6d(i)(6).

21   [59] *Caterpillar*, 482 U.S. at 398.

22   [60] *Id.* at 393.

[61] *Id.* (quoting *Franchise Tax Board of Cal. v. Construction Laborers Vacation Tr. for S. Cal.*,
23   463 U.S. 1, 12 (1983)).

[62] *Franchise Tax Board of Cal.*, 463 U.S. at 23.

pervasive.[63]  But as the Ninth Circuit has recognized, "complete preemption is 'rare.'"[64]  The

Supreme Court has identified only three federal statutes[65] that completely preempt areas of state

law to the extent that claims under those statutes are "purely a creature of federal law,"[66] and the

PREP Act is not one of them.  The Ninth Circuit employs a two-part test to determine whether

complete preemption exists for federal jurisdiction purposes: it exists "when Congress: (1)

intended to displace a state-law cause of action, and (2) provided a substitute cause of action."[67]

The PREP Act fails this test.

As an immunity statute, the PREP Act is an administrative remedy that was created to

shield covered persons from liability, not to displace a state-law cause of action.[68]  And the Act

doesn't provide prospective plaintiffs with an "exclusive federal cause of action" that replaces

run-of-the-mill state-law claims.[69]  "Complete preemption rests on the theory that any state claim

within its reach is transformed into a federal claim."[70]  So the substitute cause of action offered

---

[63] ECF No. 1 at 8–15; ECF No. 22 at 8–15.

[64] *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) (citing *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014); *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1114 (9th Cir. 2000)).

[65] *See City of Oakland v. BP PLC*, 969 F.3d 895, 905–06 (9th Cir. 2020) (identifying the three statutes as (1) § 301 of the Labor Management Relations Act (LMRA) (29 U.S.C. § 185), (2) § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1132(a), and (3) §§ 85 and 86 of the National Bank Act (12 U.S.C. §§ 85, 86)) (citations omitted).

[66] *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 23–24.

[67] *City of Oakland*, 969 F.3d at 906 (citations omitted).

[68] *See Thomas*, 2021 WL 2400970, at *4.

[69] *See id.* at *4–5.

[70] *Hagoubyan*, 2021 WL 4288524, at *4 (internal quotation marks and citation omitted).

11

by the statute must be a federal cause of action that can be pursued in federal court, not merely an administrative remedy, such as the PREP Act.[71]

To argue that the PREP Act is a complete-preemption statute, the defendants rely on an outlier case: *Garcia v. Welltower*.[72]  The district court in *Garcia* relied on AO 21-01's determination that the PREP Act is a complete-preemption statute, applied *Chevron* deference, and rejected other cases interpreting the statute because they were decided before AO 21-01 was promulgated.[73]  But *Garcia* is not persuasive because, as explained *supra*, I do not find that *Chevron* deference is warranted, nor do I agree with the opinion's conclusions.  Plus, "[t]he scope of judicial review . . . is hardly the kind of question that [we] presume[] that Congress implicitly delegated to an agency,"[74] and the PREP Act "does not grant the [HHS] Secretary authority to opine on the scope of federal jurisdiction."[75]  Indeed, "[n]early every other federal court addressing the issue of complete preemption has found that the PREP Act is not a statute

---

[71] *Id.* (citing *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1245–46 (9th Cir. 2009)).

[72] ECF No. 22 at 21 (citing *Garcia v. Welltower OpCo Group LLC*, 522 F. Supp. 3d 734 (C.D. Cal. Feb. 10, 2021)).  The defendants also purport to rely on two unpublished decisions in which courts "granted defendants' unopposed motions to dismiss based on the PREP Act," but both were decided on purely procedural grounds, not on their merits.  ECF No. 22 at 21 (citing *Branch v. Lilac Holdings, LLC*, No. 3:21-cv-00605-BAS-MDD (S.D. Cal. June 16, 2021) (considering pro se plaintiffs' failure to oppose defendant's motion as consent to grant it); *Reilly v. Delta Healthcare II, LLC*, No. 8:21-cv-1013-JSM-JSS (M.D. Fla. June 7, 2021) (granting unopposed motion to dismiss after plaintiff was ordered to show cause for failure to timely respond and didn't)).  And the defendants rely on an unpublished decision from the Western District of Louisiana, in which the judge concluded the PREP Act is a complete-preemption statute and allowed the case to narrowly proceed by ordering the parties to engage in a finite discovery period to determine how the defendants' acts of alleged misconduct are covered countermeasures under the Act.  *Rachal v. Natchitoches Nursing & Rehab. Ctr. LLC*, No. 1:21-cv-00334-DCJ-JPM (W.D. La. Apr. 30, 2021).

[73] *Garcia*, 522 F. Supp. at 742.

[74] *Smith v. Berryhill*, --- U.S. ---, 139 S. Ct. 1765, 1778 (2019).

[75] *Maglioli*, 16 F.4th at 403.

12

1    with preemptive effect."[76]  I join them and conclude that the PREP Act does not provide a basis

2    for federal jurisdiction in this case.

3

4    **II.    The federal-officer removal statute does not supply federal jurisdiction here because the defendants didn't act under a federal officer's direction.**

5        As an alternative hook, the defendants reason that if the PREP Act doesn't apply here,

6    this court still has subject-matter jurisdiction based on 28 U.S.C. § 1442(a), known as the

7    federal-officer removal statute.  That statute allows lawsuits filed in state court against "[t]he

8    United States or any agency thereof or any officer (or any person acting under that officer) of the

9    United States or of any agency thereof" to be removed to federal district court.[77]  Federal-officer

10    removal is permitted when "(a) [the removing party] is a person within the meaning of the

11    statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's

12    directions, and plaintiff's claims; and (c) it can assert a colorable federal defense."[78]  To

13    "demonstrate a causal nexus, [the defendant] must show: (1) that the person was 'acting under' a

14    federal officer in performing some 'act under color of federal office,' and (2) that such action is

15    causally connected with the plaintiffs' claims."[79]

16        The defendants argue that they "satisfy all elements for removal" under the federal-

17    officer removal statute because they "were acting under the direction of a federal officer when

18    they engaged in the alleged conduct in response to the COVID-19 pandemic; Defendants'

19    response to the pandemic was made in relation to the federal government's directives and

20

---

21    [76] *Padilla*, 2021 WL 1549689, at *4 (citations omitted) (collecting cases).

   [77] 28 U.S.C. § 1442(a).

22    [78] *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) (internal quotation marks and citations omitted).

23    [79] *Cty. of San Mateo v. Chevron Corp.*, 960 F.3d 586, 598 (9th Cir. 2020) (citing *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017)).

1  guidance; and Defendants have raised the colorable defense of immunity and preemption under

2  the PREP Act."[80]  The plaintiffs counter that the defendants "were not acting under the direction

3  of a federal officer" "by following the HHS Secretary's and Governor Sisolak's COVID-19

4  guidelines."[81]  They further contend that even though the defendants claim to have followed such

5  guidance, various health authorities identified deficiencies in the defendants' COVID-19

6  protocols.[82]  So even if the defendants thought they were acting under a federal official's

7  direction, they weren't complying.

8          Ninth Circuit authority makes it clear that a far more direct connection to a federal officer

9  is needed to remove a state-court action under this statute.  In *Fidelitad, Inc. v. Insitu, Inc.*, a

10 drone distributor sued a manufacturer who removed based on the federal-officer removal statute,

11 arguing that it had acted under a federal officer's direction in delaying the distributor's orders to

12 comply with federal export laws.[83]  Although the district court denied the distributor's motion to

13 remand,[84] the Ninth Circuit reversed, holding that the statute did not apply because the

14 manufacturer wasn't acting under a federal officer's direction.[85]  The court reasoned that no

15 federal officer had directed the defendant to delay the distributor's orders or to stop doing

16 business with the distributor, and it emphasized that no evidence showed communications

17 between the defendant and a federal officer about the orders.[86]  The court held that "'simply

18

19
_____

20 [80] ECF No. 22 at 8.

   [81] ECF No. 9 at 20.

21 [82] ECF No. 1-2 at 8; ECF No. 9 at 12.

   [83] *Fidelitad*, 904 F.3d at 1097.

22 [84] *Id.* at 1098.

23 [85] *Id.* at 1101.

   [86] *Id.* at 1099–1100.

14

complying with the law' does not bring a private actor within the scope of the federal-officer removal statute"[87] because "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored."[88] "For a private entity to be acting under a federal officer, the private entity must be involved in an effort to assist, or to help carry out, the duties or tasks of the federal superior."[89]

A California district court rejected federal jurisdiction on facts similar to those presented here. In *Cortez v. Parkwest Rehabilitation Center, LLC*, the heirs of two nursing-home residents who died from COVID-19 filed a state-court action against the facility, which then attempted to remove based on the federal-officer removal statute.[90] The court held that the defendants' compliance (or lack thereof) with general federal guidelines in response to the COVID-19 pandemic was insufficient to confer federal jurisdiction over the claims.[91] It stressed that the causal link between the defendants' actions and the plaintiffs' claims was missing because the allegations were focused on the defendants' inactions, a distinction that "serves to weaken Defendants' federal officer argument."[92] "[M]any other courts have concluded" that nursing-home defendants' mere compliance "with the government's directives during the pandemic— even if those directives were pervasive and detailed—does not mean that they were 'acting

---

[87] *Id.* at 1100 (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 152 (2007)).

[88] *Watson*, 551 U.S. at 153.

[89] *Fidelitad*, 904 F.3d at 1099 (internal quotation marks and citations omitted).

[90] *Cortez v. Parkwest Rehab. Center LLC*, 2021 WL 4033759 (C.D. Cal. Sept. 3, 2021).

[91] *Id.* at *3.

[92] *Id.*

under' a federal officer within the meaning of" this statute.[93]  Because the defendants didn't act under a federal official's direction by following or failing to follow general COVID-19 guidelines, they cannot benefit from the federal-officer removal statute.

Like in *Fidelitad* and *Cortez*, the defendants here didn't act under the direction of a federal officer, and the plaintiffs don't allege that they did.  The nursing home is a private party, not a federal actor.[94]  The plaintiffs' allegations concern the defendants' general negligence in caring for Woods while he was a resident at The Heights, not their degree of compliance with federal officers' guidance in response to the COVID-19 pandemic.  Therefore, this case was not removable under 28 U.S.C. § 1442(a).

## Conclusion

IT IS THEREFORE ORDERED that the plaintiffs' motion to remand **[ECF No. 9] is GRANTED**.  IT IS FURTHER ORDERED that the defendants' motions to dismiss **[ECF Nos. 5, 6, 23] are DENIED as moot and without prejudice to their refiling in state court**.  The Clerk of Court is directed to **REMAND this case back to the Eighth Judicial District Court for Clark County, Nevada; Department 29; Case Number A-21-833139-C**, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
December 1, 2021

---

[93] *Hagoubyan*, 2021 WL 4288524, at *5 (citations omitted).

[94] *See Maglioli*, 16 F.4th at 404–05 (illustrating the federal-officer removal statute's application in the context of government contractors, who are delegated authority by the federal government and who provide services that the government itself would otherwise provide).